UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11463-RWZ

ELIZABETH MANNING, *et al.*

v.

BOSTON MEDICAL CENTER CORPORATION, *et al.*

MEMORANDUM OF DECISION

April 18, 2012

ZOBEL, D.J.

As more fully recounted in the February 28, 2011 order, plaintiffs, on behalf of themselves and others similarly situated, filed this putative class action (herein, "Manning I") against the Boston Medical Center ("BMC"), its C.E.O. Elaine Ullian, and its senior human resources director James Canavan. The gravamen of the complaint is that defendants failed to pay plaintiffs overtime for (1) work during their lunch breaks; (2) work before their shifts began and after their shifts ended; and (3) for time spent attending training programs. Plaintiffs' original complaint was in five counts alleging violations of the Fair Labor Standard Act ("FLSA") (29 U.S.C. § 201, et seq.), ERISA (19 U.S.C. §§ 1104,1059), and RICO (18 U.S.C. § 1964) as well as estoppel. The February 2011 order dismissed the complaint for failure to state a claim. All counts except the FLSA claim were dismissed with prejudice.

At the same time, plaintiffs had also brought suit in the Massachusetts Superior Court for the same alleged failure to pay as claimed in the federal action. There they

asserted in eleven counts violations of state common law. Defendants removed and on March 10, 2011, this court dismissed all of the state law counts, with prejudice, principally on the ground that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), preempted plaintiffs' claims because they were founded directly on rights created by, or dependant upon analysis of, collective-bargaining agreements ("CBAs"). Order, Elizabeth Manning, et al. v. Boston Medical Center Corporation, et al., No. 09-11724-RWZ (D. Mass. March 10, 2011) ("Manning II"), ECF No. 38 at 2. Although plaintiffs were granted leave to amend to set fourth a "recharacterized §301 count" in Manning II, they have not done so. Instead, in Manning I they have filed the instant amended complaint that repleads the FLSA claims, and on behalf of non-union members only (i.e. employees not subject to CBAs), the common law claims. Manning II was terminated and now defendants again move to dismiss the new complaint in Manning I and also for sanctions.

The disposition of all outstanding motions follows.[1]

## I. Defendants' Motion to Dismiss

### A. Standard

On a motion to dismiss, the "court takes as true all well-pleaded facts in the complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."

---

[1] Plaintiffs' Motion to Certify Class Pursuant to the Fair Labor Standards Act 216(b) (Docket # 69); Plaintiffs' Motion to Expedite Hearing on Plaintiffs' Motion for Expedited Notice to Affected Employees (Docket # 71); Defendants' Motion to Stay Plaintiffs' Motion to Certify Class (Docket # 79); and Defendants' Motion to Clarify the February 28, 2011 Order (Docket # 46).

Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). However, "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949. "Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id., at 1941. A motion to strike class allegations is also analyzed under the 12(b)(6) standard.[2]

### B. Analysis

Plaintiffs' amended complaint is in ten counts, one for failure to pay overtime under the FLSA and nine common law claims for failure to pay straight time.[3] [4] The complaint alleges three prospective groups of plaintiffs: (1) those who worked during meals and breaks; (2) those who worked before and after their shifts ended; and (3)

---

[2] See Bessette v. Avco Financial Services, Inc., 279 B.R. 442, 450 (D.R.I. 2002) (applying 12(b)(6) standard to defendant's motion to strike class allegations made prior to discovery on the matter); see also, Bryant v. Food Lion, Inc., 774 F.Supp. 1484, 1495 (D .S.C.1991); Blihovde v. St. Croix County, Wis., 219 F.R.D.607, 613 (W.D.Wis. 2003); Sjoblom v. Charter Communications, LLC, No. 3:07-cv-0451-bbc, 2007 WL 4560541, at *6 (W.D.Wis. Dec. 19, 2007).

[3] Count I Violation of the FLSA; Count II Breach of Contract (Failure to Pay Earned Wages); Count III Breach of Contract (Failure to Provide and Pay for Missed and/or Interrupted Breaks); Count IV Breach of Implied Contract; Count V Money Had and Received in Assumpsit; Count VI Quantum Meruit/Unjust Enrichment; Count VII Negligent Misrepresentation; Count VIII Fraud; Count IX Promissory Estoppel; Count X Conversion.

[4] To the extent plaintiffs bring their common law claims to recover overtime pay allegedly due, they are preempted by the FLSA. DeSilva v. N. Shore–Long Island Jewish Health Sys., 770 F.Supp.2d 497, 532–33 (E.D.N.Y.2011) (finding common law claims preempted by FLSA to extent they sought overtime wages, but not preempted to extent they sought straight-time pay not available under the FLSA). Tombrello v. USX Corp., 763 F.Supp. 541, 545 (N.D. Ala.1991) ("Courts have consistently held the [FLSA] is the exclusive remedy for enforcing rights created under the FLSA.") (collecting cases).

those who attended training programs. The complaint then further subdivides each group into (i) those subject to a CBA (union employees); and (ii) those not subject to a CBA (non-union employees).

### 1. Individual Defendants

As an initial matter, the claims against the individual defendants, Ullian and Canavan, fail for the same pleading deficiencies outlined below, but they also fail because there are simply no allegations tying either of them directly to the alleged FLSA violations or linking them in any way to the common law claims. For personal liability under the FLSA, plaintiffs must establish that "corporate officers with a significant ownership interest [ ] had operational control of significant aspects of the corporation's day-to-day functions, including compensation of employees, and who personally made decisions to continue operations despite financial adversity during the period of nonpayment." Chao v. Hotel Oasis, Inc., 493 F.3d 26, *33 (1st Cir. 2007)(citing Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir. 1983)). The individual sought to be held liable cannot be "just any employee with some supervisory control over other employees" and must be "instrumental in causing the corporation to violate the FLSA." Id. Other than general conclusory statements that "Ms. Ullian's controlled significant functions of the business" and "Mr. Canavan was responsible for ... all aspects of human resources," there are no allegations sufficient to show that either defendant was "instrumental" in the alleged FLSA violations. The motion to dismiss the individual defendants is allowed.

### 2. Class Action Under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23

Plaintiffs claim relief on a class-wide or collective basis. They seek to certify an FLSA class under 29 U.S.C. § 216(b) for the alleged uncompensated overtime worked and Fed R. Civ. P. Rule 23 class for their common law claims.

Section 216(b) of the FLSA permits employees to recover unpaid overtime compensation by suing an employer "on behalf of ... themselves and other employees similarly situated." 29 U.S.C. § 216(b). It "establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." Comer v. Wal–Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006) (citing 29 U.S.C. § 216(b), and Hoffmann–La Roche, Inc., v. Sperling, 493 U.S. 165, 167–68 (1989)). A Rule 23 class action may be maintained if the "court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3).

Before being permitted to proceed, a plaintiff must properly allege a factual basis showing that there are similarly situated persons entitled to relief pursuant to 29 U.S.C. § 216(b) and/or that common issues of fact that predominate are sufficient to pass muster under the traditional Fed. R. Civ. P. 12(b)(6) standard. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (citing Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 555, 557 (2007) (plaintiff "at the pleading stage" must

advance plausible allegations that "possess enough heft to sho[w] that the pleader is entitled to relief."); Zhong v. August August Corp., 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007) ("While neither the FLSA nor its accompanying regulations define the term 'similarly situated,' courts have held that plaintiffs must, at least, provide a modest factual showing sufficient to demonstrate that they and potential plaintiffs ... were victims of a common policy or plan that violated the law.").[5]

Plaintiffs fail to allege that the "pre-" and "post-" shift work and the alleged uncompensated trainings amounted to some official policy for each of the more than 50 discrete occupational classes plaintiffs claim make up the potential class. Furthermore, the existence of such "policies" across a group of putative plaintiffs whose job function, hours, and daily tasks share little to no common ground is simply not plausible. Apparently aware of this deficiency, plaintiffs themselves in their motion for § 216(b) certification completely abandon these two "policies" and seek to provide expedited notice exclusively to putative defendants' subject to the "meal break deduction policy."[6]

---

[5] See also Landry v. Peter Pan Bus Lines, Inc., No. 09-11012, 2009 U.S. Dist. LEXIS 129873, at *3-4 (D. Mass. Nov. 20, 2007) (dismissing class and collecting claims where plaintiff only alleged legal conclusions not entitled to assumption of truth); Thomas v. Cendant Mortgage, No. 03-1672, 2005 WL 579903, at *1 (E.D. Pa. March 11, 2005) (Denying plaintiff's motion leave to take class action discovery and proceed as a Rule 23 class action where complaint "fail[ed] to allege properly that questions of law or fact common to the members of the putative class predominate over any questions affecting only individual members"); In re Iowa Ready-Mix Concrete Antitrust Litigation, 768 F.Supp.2d 961, 974-976 (N.D. Iowa 2011) (granting defendants' motion to dismiss where proposed class-action lawsuit against producers and sellers of ready-mix concrete alleging antitrust conspiracy where plaintiffs' class allegations were merely conclusory).

[6] The "meal break deduction policy" is allegedly a timekeeping system utilized by defendants that automatically deducts time from employees' paychecks each day for meals, potentially resulting in uncompensated work performed during that time.

However, even that limited request for collective treatment falls short, since the conclusory allegations that "[c]ommon questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on defendants' policies and practice of not properly paying employees for all hours worked ..." (id. at ¶ 7) are plainly insufficient.

> Simply claiming a violation of the FLSA will not suffice to meet the similarly situated requirement ... to conclude otherwise ... would be to conclude that any time employees alleged unpaid overtime due from the same employer such employees would be similarly situated and be allowed to proceed with a collective action. Such result is counter to the requirement that plaintiffs make substantial and detailed allegations of the FLSA violations and provide evidence to support the plaintiffs and the potential collective action members are similarly situated

Ledbetter v. Pruitt Corporation, No. 5:05-CV-329-CAR, 2007 WL 496451, at *5 (M. D. Ga. Feb 12, 2007). An employer's "mere adoption of a system that, by default, deducts meal breaks from its employees' compensation does not constitute a unified policy of FLSA violations capable of binding together [a collective action]." White v. Baptist Mem. Health Care Corp., No. 08–2478, 2011 WL 1883959, *10 (W.D.Tenn. May 17, 2011) (internal citations and quotations omitted). As noted above, the complaint lists over fifty separate categories of "hourly employees" allegedly not fully compensated for work performed during bona fide meal periods that range from "secretaries, housekeepers, [and] custodians" to "practice supervisors ... senior research associates ... surgical technologists ... radiographers [and] phlebotomists." Id. The proposed class would consist of individuals who work in different units and locations, work different shifts and schedules, have different supervisors, are entitled to

7

different rates of pay according to divergent schemes, and hold vastly different job positions and functions spanning the health care occupational gamut. By defining the potential class so broadly, plaintiffs have failed to allege that this proposed nebulous block of potentially over 4,000 plaintiffs are "similarly situated." Faced with a nearly identical FLSA claim on behalf of health care workers seeking overtime for meal-time pay improperly denied to them as a result of the defendants' automatic deduction policy, the court in Ledbetter noted:

> This case is inappropriate for a collective action because each claim will need to be established with an individualized analysis of the specific minimum wage and overtime compensation violations that may have occurred against the individual employee. Such an individualized analysis runs directly counter to the 'economy of scale' envisioned by collective treatment of similarly situated employees under [ ] the FLSA.

2007 WL 496451, at *5.

The same individualized analysis is inevitable here. The highly particularized inquiries include the dates of the work-interrupted meal breaks and trainings, the job-related activities performed during each "pre-" and "post-" shift, whether those activities constituted compensable "work" under FLSA, whether any compensation was paid for this time, whether defendants had knowledge of each plaintiffs' work, plus the compensation paid to each plaintiff and how it was calculated. These individualized factual inquiries predominate over any class-wide issues and thus also foreclose class treatment under Rule 23. Saunders v. BellSouth Advertising & Pub. Corp., No. 98–1885–CIV, 1998 WL 1051961 (S.D. Fla. Nov. 10, 1998); Nakahata v. New York-Presbyterian Healthcare System, Inc., Nos. 10 Civ. 2661(PAC), 10 Civ.

2662(PAC), 10 Civ. 2683(PAC), 10 Civ. 3247(PAC), 2011 WL 321186, *4 (S.D.N.Y. Jan. 28, 2011). Moreover, at least one court that certified a markedly similar action has since decertified the class for precisely the same reasons recounted above. See Kuznyetsov v. West Penn Allegheny Health System, Inc., No. 10–948, 2011 WL 6372852, at *7 (W.D.Pa. Dec. 20, 2011).[7]

### 3. The FLSA Allegations Against BMC

The FLSA provides in pertinent part that employees must receive overtime compensation at a rate of one and one-half times their regular rate when they work more than 40 hours per week. 29 U.S.C.A. § 207(a). To prove a violation of the statute, an employee must establish that "(1) she actually worked overtime; (2) the amount and extent of overtime [ ]; and (3) the defendant had knowledge, actual or constructive, of her work." Peck v. NGM Ins. Co., No. 94–90–B, 1995 WL 515628, at *5 (D. N. H. June 21,1995) (citing Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986)).

#### a. Failure to Adequately Plead Class Level Claims

##### i. Work During Meals and Breaks

Bona fide meal periods are not considered work time. 29 C.F.R. § 785.19. However, an employee must be "completely relieved from duty" during his or her bona fide meal period, and "is not relieved if he is <u>required</u> to perform any duties, whether <u>active or inactive, while eating</u>." 29 C.F.R. § 785.19 (emphasis added).

The complaint alleges that:

---

[7] Although the above deficiencies resulting from the lack of homogeneity of the putative class are noted in the context of defendants' motion to dismiss and strike the class allegations, they are equally applicable to and dispositive of plaintiffs' motion for class certification.

> Defendants [ ] know that employees are receiving assigned tasks that must be completed by the appointed deadline ... given the demands of the health care industry and short staffing, defendants' management knew in order to timely complete the tasks they assigned to Plaintiffs and Class Members, Plaintiffs and Class Members had to work through their unpaid meal breaks.

Docket # 49 at ¶¶ 108-109.

> [D]efendants do not prohibit Plaintiffs and Class Members from working during their unpaid breaks and do not have rules against such work.

Id. at ¶ 107.

> [W]ork is done on defendants' premises during operational hours, and in full view of defendants' managers and supervisors. Thus, defendants permit that such work be done ....

Id. at ¶ 104.

Such statements do not allege that any employees were "required" to perform any work during their off time. The only allegations in the complaint that suggest an element of compulsion are utterly conclusory in nature. Plaintiffs, for example, state "the defendants permit, and often request, that such work be done by the employees during their unpaid meal breaks" (id. at ¶ 104); however, they cite not a single example of such a "request" made to any of the named plaintiffs (or to anyone else for that matter), nor do they identify how many of the alleged unpaid hours of overtime, if any, were actually "requested" by defendants. Similarly, plaintiffs' blanket assertion that defendants "expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently require their employees to work during their unpaid breaks" is devoid of any factual details. Id. at ¶¶ 108-109.

Equally important, plaintiffs fail to adequately allege that defendants had any knowledge (actual or constructive) of the overtime work. Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995) (plaintiff must show employer "had knowledge, actual or constructive, that he was working ... if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [the FLSA]") (internal quotations and citations omitted). Cf. Deppen v. Detroit Medical Center, No. 10–12229, 2011 WL 2847405, *10 (E.D. Mich. July 19, 2011) (granting summary judgment on FLSA claim where there was "no evidence that the [Registered Nurses] were required and expected to work through their meal breaks, or that [any] administrator had knowledge that they were working through their meal breaks").

> The complaint alleges:
>
> Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods and were not getting paid for such work....
>
> When questioned ... the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendants knew compensable work time was being excluded from the employees' pay. Such conversations occurred with Plaintiff's and Class Members on a number of occasions.

Id. at ¶ 106.

Who are these unspecified "managers"? Are they the same or different for each putative plaintiff? When and with whom did these alleged conversations take place? By defining the potential class of employees as such a multifarious conglomerate, plaintiffs have only highlighted the lack of detail contained in their pleadings. Id. at ¶ 106. Their

11

broad and conclusory allegations fail to state a plausible claim to relief. See Iqbal, 129 S.Ct. at 1949 (A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (emphasis added).

### ii. Work "Pre-" and "Post-" Scheduled Shifts

In connection with plaintiffs' claim for work performed "pre-" and "post-" scheduled shifts, the complaint alleges that:

> [D]efendant suffered or permitted Plaintiffs and Class Members to perform work, predominantly to the benefit of defendants, before and /or after the end of their scheduled shifts.

Id. at ¶ 118.

> [E]mployees often had to complete their regular shift responsibilities before and/or after their schedule shift ended.

Id. at ¶ 122.

> [D]efendants, including managers, were aware employees performed this work ....

Id. at ¶ 123.

Again, the lack of any factual allegations that the defendants either required plaintiffs to engage in this "pre-" and "post-" shift work or had actual or constructive knowledge of such work is fatal to plaintiffs' claim, especially given the large and diverse prospective class. "Allegations that merely parrot the elements of the cause of action" do not suffice. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

### iii. Unpaid Training Policy

The complaint further asserts that:

> [D]efendant suffered or permitted Plaintiffs and Class Members to attend compensable training ... however, defendants fail to pay employees for <u>all</u> time spent attending such training sessions...

<u>Id.</u> at ¶¶ 128-129.

> Often these training activities occurred during regular working hours; were required by defendants; and were directly related to their position with defendants.

<u>Id.</u> at ¶ 130.

Here, plaintiffs allege that "defendant fail[ed] to pay employees for <u>all</u> time spent attending such training" (<u>id.</u> at ¶ 129) (emphasis added), they do not identify what portion of the training plaintiffs were not paid, where these training sessions were conducted, what groups of employees attended, or even an estimate of the amount of unpaid time spent attending such training sessions. Further, plaintiffs allege that the training activities "occurred during regular working hours." <u>Id.</u> at ¶ 130. It is unclear whether they are claiming that they were not paid <u>any wages at all</u> for those hours, or that they were entitled to additional pay for the training sessions that they did not receive – and if the latter, the legal basis for such additional payments.

### b. Failure to Adequately Plead the Individual/Lead Plaintiff Claims

Plaintiffs allegations regarding the named plaintiffs fare no better. The complaint alleges, for example, that Elizabeth Manning, a registered nurse, worked for defendants' Newton Pavilion Location from November 2004 until February 2009. Her hourly rate was $52 per hour and she typically worked 36 hours per week (although "approximately"

13

once a month she worked a 40-hour workweek). Her meal breaks were interrupted "90% of the time" resulting in "1.5 hours during a typical week" of additional work; she worked 15 minutes before each shift and 30 minutes after each shift performing various work-related tasks and attended "in-service trainings on new procedures." Docket # 49 at ¶ 89. However, there is not a single allegation that Manning requested that she be paid for this additional time formally or informally in any manner, that this work was actually required, any dates or times she attended training sessions, or that any manager or supervisor knew of her alleged additional work. There are no allegations approximating the number of overtime hours, if any, Manning worked.

Plaintiffs Lisa Rivers', Rhonda Williams' and Reva McCarthy's allegations are similarly deficient.

For these reasons, defendants' motion to dismiss the individual plaintiff's claims is allowed.

### 4. The Common Law Allegations

Eight of plaintiffs' nine common law claims fall generally into three groups: (1) contract and quasi-contract claims (Counts II, III, IV, V and VI); (2) fraud claims (Counts VII and VIII); and (3) unjust enrichment claims (Counts V and VI). In addition, plaintiffs claim for conversion (Count X). As previously noted, plaintiffs assert their common law counts only on behalf of putative plaintiffs not subject to CBA agreements.[8]

---

[8] Named plaintiffs Manning, Rivers, and Williams are all admittedly subject to CBAs; therefore, McCarthy is the only individual plaintiff asserting common law claims.

As for the first group, plaintiffs do not allege any contracts or "promises," express or implied, other than the CBAs. Nor do they allege violations or breaches of any contracts other than the CBAs. Accordingly, the common law contract claims are dismissed.

Fraud and negligent misrepresentation must be pled with particularity. Fed.R.Civ.P. 9(b); <u>Freeman v. MetLife Group, Inc.</u>, 583 F.Supp.2d 218, 223 (D. Mass. 2008) ("fraud or mistake must be pled in a complaint with specificity. The same applies to misrepresentation, which 'is considered a species of fraud'). The complaint simply makes no particularized allegations to meet the heightened pleading standard for fraud.

Plaintiffs' unjust enrichment and "money had and received" claims are defective for failure to allege that defendants required or had knowledge of the work allegedly performed by plaintiffs. Therefore, the complaint does not adequately claim that it would be unjust or unconscionable for defendants to retain these monies. For the same reason, plaintiffs do not properly assert that defendants' retention of the allegedly owed funds is wrongful and thus their conversion claim fails.

Defendants' motion to dismiss the common law claims is allowed.

## II. Defendants' Motion for Sanctions

Defendants move for sanctions pursuant to Fed. R. Civ. P. 11. "The imposition of sanctions for a Rule 11(b) violation is a matter of discretion, requiring the court to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." <u>On Time Aviation, Inc. v. Bombardier Capital Inc.</u>, 570 F.Supp.2d 328, 330 (D. Conn. 2008). "[S]election of the

type of sanction to be imposed lies with the district court's sound exercise of discretion."
Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 (11th Cir. 2002).

Defendants argue principally that plaintiffs flouted the March 10, 2011, order dismissing the common law claims with prejudice, by re-pleading virtually the same common law counts in the amended complaint. However, that order applied to plaintiffs' "claims founded directly on rights created by collective-bargaining agreements ["CBAs"], and also claims substantially dependent on analysis of a collective-bargaining agreement." Order, Manning II, ECF No. 38 at 2. In their amended complaint, defendants specifically assert the common law claims only on behalf of employees not subject to a CBA agreement. Docket # 49 at ¶ 2 n.1. Therefore, while the form of the amended complaint including the additional counts is certainly afield from what was expected by defendants and to some extent the court, I decline to impose the requested sanctions.

There remains the question whether plaintiffs should be granted leave to amend yet again. At least five other cases have been brought in this district, by the same plaintiffs' counsel, alleging the same or substantially similar claims,[9] and over a dozen such actions, also against health care facilities and also brought by plaintiffs' counsel, have been initiated in other federal districts throughout the country.[10] Many use a

---

[9] Hamilton v. Partners Healthcare, No. 09-cv-11461 (2009) (Woodlock, D.J.); Woolfson v. Caregroup, Inc., No. 09-cv-11464 (2009) (Tauro, D.J.); Pruell v. Caritas Christi, No. 09-cv11466 (2009) (O'Toole, D.J.); Cavallaro v. UMass Mem'l Health Care, Inc., No. 09-cv-40152 (2009) (Saylor, D.J).

[10] Camesi v. University of Pittsburgh Medical Center, No. Civ.A. 09-85J (W.D.Pa. 2009); Colozzi v. St. Joseph's Hosp. Health Center, No. 5:08-cv-1220 (N.D.N.Y. 2008); DeSilva v. North Shore-Long Island Jewish Health System, Inc.,No. 10-cv-1341 JFB ETB (E.D.N.Y. 2010); Gordon v. Kaleida Health, No. 08–cv–378S(F) (W.D.N.Y. 2008); Hamelin v. Faxton-St. Luke's Healthcare, No. 5:08–cv–1219

16

substantially identical complaint,[11] and many have already been dismissed at least once with an opportunity to re-plead.[12] Twombly and Iqbal are not new ground for plaintiffs nor should their pleading standards be a surprise, neither should the defendants' objections to plaintiffs' consistently vague and conclusory pleadings. At this point, plaintiffs have received the benefit of numerous rulings from federal judges around the country on the requisites for proper pleadings, and have raised the ire of some:

> [T]his Court joins at least seven other district courts that have dismissed substantially similar complaints as little more than an 'aggregation of conclusory statements and general allegations' Thus, Plaintiffs' counsel,

---

(N.D.N.Y. 2008); Hintergerger v. Catholic Health System, No. 08–cv–948S (W.D.N.Y. 2008); Kuznyetsov, No. 2:10-cv-948; Taylor v. Pittsburgh Mercy Health System, Inc., No. Civ.A. 09-377 (W.D.Pa. 2009); Wolman v. Catholic Health System of Long Island, No. 10-cv-1326 JS ETB (E.D.N.Y. 2010); Davis v. Abington Memorial Hosp., Nos. Civ.A. 09-5520, Civ.A. 09-5550, Civ.A. 09-5549, CIV.A. 09-5548, Civ.A. 09-5533, Civ.A. 09-5551 (E.D. Pa. 2009) ; Sampson v. Medisys Health Network Inc., No. 10-cv-1342 SJF ARL (E.D.N.Y 2010); Meyers v. Crouse Health System, Inc., No. 5:08-cv-1221 (N.D.N.Y. 2008).

[11] Nakahata at 2011 WL 321186, at *1 ("The same boilerplate complaint, with only minor alterations, has been filed in at least eight other cases in the metropolitan area: Rosser v. Continuum Health Partners et al., No. 10-cv-2633(PAC) (S.D.N.Y.); Spano v. Mem'l Sloan-Kettering Cancer Ctr. et al., No. 10-cv-2660(PAC) (S.D.N.Y.); Mott v. NYU Hosps. Ctr. et al., No. 10-cv2663(PAC) (S.D.N.Y.); Matthews v. Mount Sinai Med. Ctr. et al., No. 10-2664(PAC) (S.D.N.Y.); Hackett v. Montefiore Health Sys., Inc. et al., No. 10-2682 (S.D.N.Y.); Pruell v. Cartas Christi, Nos. 09-cv-11722-GAO & 09-cv-11466-GAO (D.Mass.); Hinterberger v. Catholic Health, No. 08-cv-00380S (W.D.N.Y.); Cavallaro v. UMass Memorial Health Care, Inc., No. 09-cv-40141-FDS (D.Mass.).")

[12] Wolman, 2012 WL 566255, at * 1,13 (dismissing FLSA and common law claims where "although FAC is over forty pages long, the majority of its 246 paragraphs are mere 'threadbare recitals of the elements of a cause of action, supported by conclusory statements") ; Hintergerger, 2012 WL 125152, at * 12 (denying remand and dismissing NY common law claims where plaintiffs failed to state a claim); Davis, 2011 WL 4018106, at * 6 (dismissing FLSA, ERISA and RICO claims where claims not sufficiently pled); Cavallaro, 2011 WL 2295023, at *5 (dismissing FLSA and ERISA claims where plaintiffs "failed to make plausible allegations that any of the eight corporate defendants is their employer"); Nakahata, 2011 WL 321186, at * 4-6 (dismissing FLSA claims as "broad, generic, unspecific allegations", RICO claims as "vague", and common law claims as "bald assertions"); DeSilva, 2011 WL 899296, at 510 (dismissing plaintiffs' FLSA claims for failure to allege even "minimal" facts regarding the allegedly improper work policies); Sampson; 2011 WL 579155, at 10 (dismissing FLSA and RICO claims for failure to state a claim); Pruell, 2010 WL 3789318, at 4 (dismissing FLSA overtime claim where plaintiffs failed to even provide "approximations [ ] sufficient to state a wage claim" and RICO and ERISA claims for failure to plead sufficient factual allegations).

17

> who represent the Plaintiffs in each of those actions, are on sufficient
> notice that '[i]t is not enough to simply parrot word-for-word, the 'vague and
> conclusory allegations' used 'in more than a dozen actions' For the
> Parties' sake, and in the interest of reducing the substantial costs already
> associated with this litigation, the Court directs Plaintiff's counsel to
> remedy the gaping deficiencies noted by this Court and others if it chooses
> to replead.

Davis, 2011 WL 4018106, at *6.

> In short, these complaints contain no more than mere boilerplate
> assertions of various legal conclusions. Accordingly, they cannot survive
> the defendants' motions to dismiss. The very fact that this boilerplate
> complaint has been used, with identically vague and conclusory
> allegations, in more than a dozen actions in New York and elsewhere is a
> vivid demonstrative of how not to plead.

Nakahata at 2011 WL 321186, at *6.

> This court will not be impressed if the Third Amended Complaint prattles on for
> another 217 paragraphs solely for the sake of repeating various conclusory
> allegations many times over.

Sampson, 2011 WL 57955, at *10 (citing Wolman, 2010 WL 5491182, at *7).

Litigation is not a game, and while leave to amend should be liberally granted that does not mean it should always be granted. Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 51 (1st Cir.1998). Moreover, it is clear that affording plaintiffs here another opportunity to amend would be futile.

## III. Conclusion

Defendants' Motion to Dismiss or Strike All Counts of Plaintiffs' Amended Complaint and to Strike Class Allegations (Docket # 58) is ALLOWED, and plaintiffs' claims are dismissed with prejudice. Defendants' Motion for Sanctions (Docket # 63) is DENIED. Defendants' Motion for Clarification (Docket # 46), Plaintiffs' Motion to Certify

Class Pursuant to the Fair Labor Standards Act 216(b) (Docket # 68), Plaintiffs' Motion to Expedite Hearing on Plaintiffs' Motion for Expedited Notice to Affected Employees (Docket # 71), and Defendants' Motion to Stay Motion to Certify Class (Docket # 79) are DENIED AS MOOT.

Judgment may be entered dismissing the Amended Complaint with prejudice.

|  April 18, 2012  |  /s/Rya W. Zobel  |
|---|---|
|  DATE  |  RYA W. ZOBEL  |
|   |  UNITED STATES DISTRICT JUDGE  |